166604, Kofi Alexander v. Eagle Manufacturing Company. Language not to exceed 15 minutes per side. Mr. Hawley. Morning, Your Honors. I please the court and counsel. My name is Ken Hawley and I represent Kofi Alexander. This case presents an important question of public policy and employers throughout the states of Michigan, Ohio, Kentucky, and Tennessee will be watching for this court's decision. And they will be conducting and altering their behavior based on the decision of this court out of this case today. The public policy question we're concerned with is the exception to the Employment at Will Discharge general rule in Kentucky. And we're talking about what's called the refusal exception. That's where an employee's discharge of an at-will employee is so contrary to public policy as to give rise to a wrongful termination claim where the reason for the employee's discharge is his failure or refusal to violate the law in the course of his employment. But there was no express refusal here, was there? If you look at the language, I understand that your client says that the company basically wanted him to sanction wrongful conduct, that is, the erasure of the numbers. But there was never any directive to him, was there, to violate the law? Yes, I believe there was in this case. And I think that the request, specifically, was the assignment of job duties to Kofi Alexander, which is to inspect and sign off on the pallets of engine blocks, certifying that he has inspected them and these engine blocks are good and they are not defective. He wasn't being asked to sign up on these, was he? He was. But when he asked who's going to sign up on this, somebody else said, I'll put my name on it. Well, that's really, I think, the crux of this case. And what I believe the Court's focus should be on in order to accomplish this public policy, to uphold it and to protect the public. It's not even clear to me, Mr. Hawley, that your client would necessarily have been inspecting these particular engine blocks or that he's the only person who performed that work. I'm having trouble finding in the record anything that specifically links him to these particular engine blocks. Well, it would be paragraphs 30 and 33 of the complaint and paragraph 48 read in conjunction. That deals with Kofi Alexander's specific job duties. These pallets come to him for inspection. And it is his job to inspect them, remove the defective blocks and replace them with good engine blocks and then sign off. That's paragraph 48. The problem here is this was dismissed on a Rule 12b6 motion. The questions you all are asking are really questions that would be answered through discovery. I mean, we can't prove a case in a complaint, and nor do the standards for pleading, even under the heightened standards of Iqbal and Twombly, require us to prove our case. But in order to get over the plausibility hurdle that Twombly requires, we would have to look at whether there was a directive to him to violate the law or to refuse to do something that was not lawful. And I'm struggling with where we get the language that's sufficient enough to meet that hurdle. And that's why I know you said we need discovery to get to that, but under Twombly there has to be at least a sufficient amount of information there to make it plausible that they could prevail. And I believe that evidence that the allegations in the complaint are sufficient to render that plausible. Let's look at, let's follow an engine block through this process. It comes from the production plant, where they drill the cylinder holes and the bolt holes, and those have to be drilled to very, very precise specifications, micrometers. If it's not, it could possibly break down Ford's production lines when it's shipped up there. Or worse, it could result in a defective engine block. Somebody's daughter or wife could be stranded. I don't think anybody is challenging that this was an important function that needed to be performed, and that defective things should have been taken off the line. I don't think that there's a quarrel with that. The engine block would come to Kofi when he is hired and his job expectation, his employer told him, this is what you are to do. You are to inspect these blocks, and if they have the defective codes on them, you remove them, you replace them with a good block, and then you sign off your name saying that I, Kofi Alexander, have inspected this pallet of blocks, and I certify, basically, that these are good engine blocks. In common parlance, can you refuse to do something without being asked to do it? Well, when they put a pallet of fraught... Can you refuse? Does the word refuse contain the idea that you say you will not do something even though you haven't been denied? You could say, I refuse to go to Texas tomorrow. That's a refusal, isn't it? I don't have to be asked specifically to go to Texas. I may know that they might ask me. Is that right? You can't refuse for purposes of the public policy exception. You can't refuse to do something if you've never been asked to do it. I think the important question is, what are the many forms... It seems to me you concede away your case when you say that. Well, I believe that he's been asked. Why can't you refuse to do something that you're expected to do even though you haven't been asked to do it? Well, I think that if you're expected to do it, then you've been asked is the difference. When you say it that way, you say it in a way that sort of strains against the semantic meaning of ask. It seems to me it'd be easier just to have a broader meaning of the word refuse. Refuse includes things that you may not have been asked. But to say that you've been asked when you haven't been asked is a little bit... I'm just wondering about the strategy you're using for the words. Well, it's really the facts. Here is a palette of defective blocks that have been altered, that have been placed... Coming down the line, that's what I'm suggesting. They've been placed... Coming down the line and you're expected to sign off on them. You say, I refuse to sign off on them, and they fire you. Looks like a refusal to me. It doesn't look like he's been asked to me. Well, he has been asked because that's his job expectation. And if we ask you to sign off on all of these blocks... You just want him to take the word ask to include job expectations. I think that if it's your job expectation to sign off on the engine blocks, that they are good, and a palette of defective engine blocks are put in front of you for you to perform your expected job duties by signing off on them and you refuse, you have been asked and you have been effectively asked and you have effectively refused. And that should be the court's focus. Not the language, not the manner, not the magic words. There are no magic words here. The question is, has there been... But he didn't say, I refuse to sign. He said, who's going to sign off on these? Which would indicate that there was somebody else perhaps who could sign off on them. No, there wasn't somebody else. No, but I'm saying his question was, who's going to sign off on these? And that's a rhetorical question by Kofi Alexander because he's the only one there that's supposed to be signing off. These people are not even supposed to be in that job. Somebody else said, I'm going to sign off on them or I'll put my name on them. And Kofi at that point went and reported that and said, no, you can't do it either. Those people weren't even supposed to be there. They were from the other side of the street. They were from the production facility from a different shift. They had no business being over there. May I ask you something else? Sure. What indication do you have that the Kentucky courts interpret this public policy exception in the same way that you are asking us to do it? The Reminger case. The Reminger case deals with the two attorneys from the Reminger law firm who discovered that the home office was fraudulently altering their attorney billing codes to show that attorneys were altering their records to show that attorneys were doing the work instead of paralegals. They objected to that. They were never asked to do it themselves. They objected to it. They instructed their staff not to do it. They were fired for their refusal to participate and go along with that scheme. The Kentucky court said that under those circumstances, under a 12B6 situation, that was sufficient to state a claim under Kentucky law. The Hill case is also instructive. The husband was never instructed to do anything. The husband never refused to do anything. It was the wife. But both husband and wife were fired. So I believe that the Kentucky Supreme Court allowed it and the Kentucky District Court, Federal District Court, allowed a Reminger case. The Hill and the Reminger cases. The question really is, has there been an effective request? If I'm an employer and I silently sit across a table and hand a fraudulent document to an employee whose job is to sign that document and glare at him and the employee says, I'm not going to sign that and I fire him, then I say, and I believe that you should say, that there has been an effective request and an effective refusal. No, Reminger is not a Kentucky court. It's a Federal District Court applying Kentucky law and a Kentucky district court. We have an obligation to follow what Kentucky says its law is. We have no such obligation with respect to following a Federal District Court's guess at what Kentucky law is. Then that would be the Hill case, which is the Kentucky Supreme Court, in which the husband and wife were both employed. The wife was asked to present fraudulent or false testimony. The wife refused. And so we have a direct request there. That would support the wife's claim. The only thing that would support is the husband's benefiting from his relationship with the wife. No, no, no. The husband was an employee also. They fired the husband, too. That's what I just said. I didn't say anything different from that. Okay, I thought you meant that just being married to her that he benefited from her employment. The husband in the Hill case was never asked to do anything illegal. The husband in the Hill case never refused to do anything illegal. The husband in Hill was fired. The husband in Hill, according to the Kentucky Supreme Court, had a case. Now, I think we're overreaching. I just don't see how that helps you very much. It's the same situation where there's been an effective request to go along. Who's been asked to do something wrong here, and consequently, therefore, Mr. Alexander benefits from his relationship with the person who's directly asked to do something wrong? That's not this case. Well, I believe in this case where Kofi Alexander has presented a pallet of engine blocks that have been altered to show that they're good blocks when they're defective, and it's his job to sign off on it, and he refuses. He has been asked, and he has been refused. I have been guilty of not paying any attention to your light. Are there any other questions? I have one quick question for clarity. There's two prongs, as I understand it, of the Kentucky public policy exception, and one is the one you've been arguing. The other, I guess, is exercising a statutory right. You're not relying on the exercising? No, we're not. No, we're not. Thank you. That's my question. I did forget to reserve three minutes. May I still do so for rebuttal? Did you? He had to use 12 minutes. Have I used 12 minutes? 13 now. Okay. You may have your rebuttal time, but not if you keep talking. Okay. I'll reserve the rest of my time for rebuttal. Thank you. May it please the Court, Counsel. Good morning, Your Honors. Casey Bond for Applee Eagle Manufacturing. I think the Court has hit the nail right on the head. It would require an expansion of Kentucky law to find that appellant's allegations in his amended complaint are sufficient to make out a claim for wrongful discharge in violation of public policy. The Kentucky courts have intentionally construed this cause of action very narrowly. The courts have stated that the tort must be clearly defined and suitably controlled. That's both coming from the Supreme Court of Kentucky and the Court of Appeals. It should not be expanded in this case because it would be inconsistent with prior Kentucky cases. There's not any dispute here but that Mr. Alexander has alleged facts which, if proven, would be sufficient to establish that he was, in fact, fired because he reported this illegal conduct on the part of fellow employees. That's not an issue. Correct. We must assume his allegations as true. What is critically missing from his allegations, however, is that there was no affirmative request for him to violate the law and there was no direct refusal for him to violate the law. Can I ask a question? I'm trying to get it. I take your point that the Kentucky courts don't want this exception to sort of expand into anybody who gets fired and said, well, you fired me because I knew Joe down the hall was doing something wrong and I was about to report it. That's the kind of thing where if you allow that, you're just creating a whole gap in the employment at will doctrine. On the other hand, there might be some things that are very close to the heart of the exception that might not fit within what you're describing as the contours of the exception. For instance, what if an employer says, you may be asked tomorrow to do X and X is an illegal act. Will you do it? And he says, I refuse to do that. And then he's immediately fired. You would say that's not covered. I would say. That's not been asked. We'd have to look at the facts. We do have to look at the facts. I think on a 12B6 motion, those would be sufficient facts. Those would be sufficient, but you just set a rule that would exclude that. That's the rule you articulated would exclude that. You said you have to be affirmatively asked. He was not asked. He just refused. He was asked. No, he wasn't asked to do it. He was asked if he would do it, if he were asked. And you say that's enough? I believe the Kentucky courts would say. Even though they've never said it on those particular facts. No, they haven't. So I guess you're conceding from my perspective that there might be factual situations where an expressed refusal to do something that you're likely to be asked that's coming down the pike, as it were, might be enough to state a claim. And we might have to get some discovery to see just what the circumstances were. No, Your Honor. Why not? The factual circumstances that you presented, there was an indication from the employer that they were affirmatively going to ask the employee to violate the law tomorrow. You may be asked. You may be asked. It's possible that you'll be asked tomorrow, was my question. I suspect that the Kentucky courts, if someone was fired after indicating they would refuse an affirmative request that was going to be coming, they would say that probably. You don't see how that's kind of similar to what's going, what's alleged at least in the complaint? It says ordinarily he would inspect these things. They're coming down to him. I do not. And he's just fired like that? The facts in this case indicate that as soon as he started the discussion about these engine blocks in question, a supervisor says, I'll sign these forms. He was never asked to sign these forms. That's one reading of the colloquy, but, I mean, a jury might read that colloquy different. I certainly read it differently. If I'd been a juror, I would have been suspicious. But maybe I'm not the typical juror. I think the difference, it seems to me, between the scenario that we have here and the one that Judge Rogers outlined, is that the employer's behavior and participation in the illegal conduct was directly at issue and explicitly discussed. And that's not this case. No conduct of Mr. Alexander's was ever under discussion with the employer. I mean, I'm sort of making an argument for you, so you might. I think that is what I was attempting to say. The difference, in my view, after reading the Kentucky cases, is there was an indication under Judge Rogers' set of facts that there was going to be an affirmative request. The employer said, hey, I'm going to ask you tomorrow to do this. Employee says, no. Here, there was never any indication to Mr. Alexander that he was being requested to engage in any type of illegal behavior with these engine blocks. He walked in. He sees a scenario that, of course, he's deemed to be some illegal conduct. We have to accept that is true for purposes of the 12b-6. As soon as he raises the discussion and asks who's going to sign these, the supervisor says, I'll sign them. He is then sent home because, as he says in his complaint, the allegation was he was cursing at the supervisor as a result of this incident. He never even had the opportunity, frankly, to actually refuse to perform any function with regard to these engine blocks because he had been sent home. The cases, even the appellant in his briefing calls it an implicit request and says that- The person who said he would sign, is there any indication that that was in fact, it wasn't Mr. Alexander's supervisor, was it? I don't believe it's clear in the amended complaint who exactly was just a supervisor. But appellant says that Eagle intended to have him unwittingly sign fraudulent paperwork as part of this implicit request. Making an implicit request or having someone do something unwittingly is not an affirmative request under any stretch of a definition of what an affirmative request is. You've relied fairly heavily on the Welsh case for this affirmative request. And that was the Kentucky Court of Appeals and I know that district courts have written on that. But the Welsh case was not a published opinion. Is there some other case where Kentucky has written and specifically endorsed this affirmative request requirement? Yes, Your Honor. In fact, just the year after the Welsh decision was decided, which was a Kentucky Court of Appeals case, is when the Hill v. Kentucky Lottery Court case was decided by the Kentucky Supreme Court. And in that case, the Supreme Court said there was an issue about whether the plaintiffs could make out both a claim under the anti-discrimination statute in Kentucky and a wrongful discharge claim. The Kentucky Supreme Court said had the defendant never approached the plaintiff about her testimony in her co-worker's matter and the only conducted issue was her eventual testimony on his behalf, a civil rights claim could be stated upon termination. But there would be no basis for a common law wrongful discharge claim, i.e., there was no request for perjured testimony. So the Supreme Court clearly stated in that case there had to be the request to support the claim. So when you think that case, that Hill would rule out this notion of an implied request along the lines of there being an expectation based on your job duty and a refusal to perform that function of the job, you think that would not amount to or could not amount to a taniment request under the reading of Hill? I think that's correct, Your Honor. If we look at the other cases in Kentucky where this cause of action has been decided, all of them involved very clearly affirmative requests. The language used by the courts are very clear that they narrowly tailor this claim and that there must be an affirmative request. For instance, in the Burton v. Zwicker and Associates case, an employee was pressured by the supervisor to change statements he had made to outside counsel in the course of a sexual harassment investigation and ultimately change his testimony if he was going to have to appear in court about that. In the Sparks v. Henson case, the employee was instructed to falsely describe her role in a scheme regarding the distribution of customer satisfaction surveys. In the Northeast Health Management case, employees were asked to lie in the course... You're citing cases which have some force where there was such a clear and explicit request, but that's not the same as a holding that less than that was not enough. I think it's telling that there has never been a case decided by the Kentucky courts that has expanded the wrongful discharge public policy claim to a set of facts that involves what would amount to an implicit request. And I want to make one mention in the... You don't have any cases which say it's not enough. When you get something where someone is known to be about to be presented with a situation and affirmatively says, I won't do it. I understand you can argue about whether this was sufficiently affirmative refusal. But assuming that this is the equivalent of, I'm not going to do that, which in common parlance, who's going to do that when you're talking about the person who's going to come in the next day might convey, I'm not going to do that. So if you assume they're saying, I'm not going to do that, you don't have any cases that preclude that. I believe Welsh is the closest case. Granted, it's an unpublished decision, but it is from the Kentucky Court of Appeals. And it's depublished too, right? I mean, it's one where the Supreme Court... I'm not sure about that, Your Honor. The information I have is that the Supreme Court determined that it would not be published in denying review, which maybe suggests something. I'm not sure what. Judge Rogers raises an interesting point about cases that, you know, not having cases that really delineate the... I mean, you know, it's easy to say that a refusal, it must be shown, but it's not... or an explicit request must be shown. But it's not too helpful when you don't have something that is a less than case to outline the contours of this exception. So what outside... Your Honor, there really isn't, because Kentucky has somewhat unique law with regard to this wrongful discharge claim. It is more narrow than the wrongful discharge claim is in many other states. And is that based on the case language that we've already talked about? Yes. I think if you look, as you look at the entire body of cases, because granted, there is not a case that affirmatively says an implicit request is not sufficient. So the next best thing we can do is to look at the entire body of case law where every time a court has accepted this claim, they have used very strong language indicating that there must be an affirmative request followed by a refusal. And all of the facts indicate very clearly what would be deemed affirmative request to violate the law. You could draw, if you were trying to figure out what the underlying policy of the court in coming up with this doctrine, it would seem rather than getting into formalisms, it would be pretty clear that they don't want people to be able to resist being fired by saying, I'm not reporting somebody else's crime or violation of the law. And I'm not going to report that you did something bad. That that shouldn't be enough. On the other hand, when the person is required to do something bad and refuses to do it, by bad I mean illegal or whatever, that that's kind of at the heart of what the public policy exception is directed to, isn't it? I mean, if we're just looking at what presumably was driving the exception and what presumably was driving the limits, this case has a feel of being over in the case of what the purpose of the exception was all about, or not. Do you see what I'm asking? I do. And with all respect, Your Honor, I think that we could just as easily look at all these cases and determine that the underlying policy for the reason for this claim is because the court doesn't want cases to proceed where someone is just assuming I'm being asked to do something illegal. They want it to be a clear-cut set of circumstances where an employer has asked them to violate the law. Here, it takes some assumption on the part of Mr. Alexander that, hey, I see what's going on here. I assume that they are going to ask me, as I do in the normal course, to sign this paperwork. The court alleges that it was coming to him the next day on an ordinary basis, ordinarily. But, again, as soon as there was a discussion ensued about these engine blocks, the supervisor says, I'm going to sign them. He did indicate it was out of the ordinary. I'm not a supervisor. You do what you're going to do or something like that. It was out of the ordinary for these people to be in this area dealing with the engine blocks, as stated in the amended complaint. So I don't think it's a stretch to say this was going to be a different set of circumstances than the normal course where an engine block would come to him, nobody else was involved in it. These were obviously being treated differently than the normal course. Your time is right up now, but I want to ask one final question. What public policy interest would be the justification on a public policy basis for differentiating between the employee who is asked to do something illegal and the employee who instead reports that illegal activity of others is going on in the workplace? Your Honor, I'm not sure what the basis is for that distinction, but Kentucky courts have clearly determined they are going to make that distinction in allowing the wrongful discharge claim to proceed. Okay. Thank you. Mr. Hawley. The real issue in this case is what is the public policy exception in Kentucky, and we believe that the whole body of Kentucky case law to the Supreme Court through the Firestone, Griswold, and Hill decisions is that if there has been an effective request for the employee to violate the law, if the employee makes an effective refusal to violate the law, and the employee is fired as a result, then that violates public policy. If we start parsing out different language and magic words, and the difference between an employee who says, sign this, and will you sign this, or I'd really like if you sign this, or just shoves a piece of paper in front of him and glares at him and hands him a pen, if we're making the distinction in the law on those facts, that makes the law ridiculous. It completely undermines the public policy. If there's been an effective request, by putting this pallet of blocks in front of Kofi Alexander and expecting him to sign off on it, remember these people sneaked in while he and his employees were on break. He wasn't even supposed to find out that they had altered these things. He came back to get his car keys and discovered them in the act of altering these documents. Had he just come back from break, guess what would have happened? He would have signed off on those blocks and somebody would have been driving that car today. Were they altering documents? I thought they were altering. No, they were using nail polish to remove the defective code that had been painted onto the block by the people over in the plant where they were supposed to be on the previous shift. This was a completely fraudulent scheme that Kofi walked in on. And again, are we going to parse out an employee who says, I refuse to sign off on that. I'm not going to sign off on that. Who's going to sign off on that? Or the employee who simply says and walks away. All four of those employees have effectively refused. And if all four of them get fired, then all four of them should have a claim. That's really what this is about. And I think you addressed this before, but did you find a Kentucky case that addresses that implicit or the kind of circumstance that you just addressed where there's sort of an indirect request or a request by conduct? Well, I think unfortunately the two most on-point decisions are two federal court decisions, which is the Arterburn decision where it was someone else's job that the employee just said, hey, someone over there is doing something illegal. And the court threw it out on a 12B6. And then the Reminger case where they ---- My question, you mentioned this earlier, my question was whether it was a Kentucky case. I don't believe that there's certainly no Kentucky case that I have found that has thrown out a case on a 12B6 motion. If we look at all the cases cited by the defendant, the Charles case, the Burnett case, the Welsh cases, those were all summary judgment cases. I mean, the Welsh case was three years into discovery and multiple motion practices, remanding the federal court and back. The Hill, Northwest, and Sparks and Burton cases, they all went to jury trial. They went through the whole discovery. That's really an important part about this case. Thank you, Your Honor. We appreciate the arguments both of you have given, and we'll consider the case carefully. Thank you.